```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
P.W. and D.W., Individually, and as
Parents and Guardians of H.W., a minor,

                    Plaintiffs,           12-CV-6408
          v.                              DECISION AND ORDER

FAIRPORT CENTRAL SCHOOL DISTRICT, et al.,

                    Defendants,
_____
```

# INTRODUCTION

Plaintiffs, P.W. and D.W., individually, and as parents and guardians of H.W., a minor, ("Plaintiffs"), bring this action against the Fairport Central School District (the "District"), John Hunter, Superintendent of the District, David Dunn, Principal at the Martha Brown Middle School ("Martha Brown"), Nicholas Cocilova, a counselor at Martha Brown, Brent Provenzano, Principal at the Johanna Perrin Middle School ("Johanna Perrin"), Kevin Henchen, Assistant Principal at Johanna Perrin, Dan Parsons, a gym teacher at Johanna Perrin, and other known or unknown members of the District (collectively, "Defendants"). Plaintiffs allege that the Defendants inadequately responded to peer-on-peer bullying, which was both sexual and non-sexual in nature, violating state and federal law. Plaintiffs specifically allege a cause of action pursuant to 42 U.S.C. § 1983[1], negligent infliction of emotional

---

[1]The complaint does not specifically articulate the precise causes of action Plaintiffs seek to allege pursuant to Section 1983. However, Plaintiffs' memorandum of law in opposition to Defendants' motion to dismiss clarifies that Plaintiffs allege a substantive due process violation

distress and negligent hiring, supervision and training. (Docket No. 1.)

Defendants move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that Plaintiffs have not set forth a plausible claim to relief. Plaintiffs oppose the motion. For the reasons set forth below Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs' substantive due process claim is dismissed and Plaintiffs will be allowed to proceed with their claim under Title IX and their state law claims.

## BACKGROUND

The following facts are taken from the complaint. (Docket No. 1.) Plaintiffs' son, H.W., attended Martha Brown during the sixth and seventh grades, from 2009 through 2011, until he transferred to Johanna Perrin for the 2011-2012 school year, as an eighth grade student. Plaintiffs allege that H.W. experienced peer-on-peer bullying at both schools and that teachers and administrators failed to adequately respond to H.W.'s and their complaints of bullying.

During the 2009-2010 school year, H.W. complained to school counselor Nicholas Cocilova ("Cocilova") about daily bullying by other students. The bullying included teasing and name calling,

---

under the Fifth and Fourteenth Amendments to the Constitution, as well as gender-based peer-on-peer harassment under Title IX of the Education Amendments of 1972, 86 Stat. 373, 20 U.S.C. § 1681(a). (Docket No. 10.)

comments written on his locker, and students shoving him and stabbing him with pencils. Plaintiffs allege that Cocilova advised H.W. to ignore the behavior, but he did not inform principal David Dunn ("Dunn").

H.W. told his parents in March of 2011 that he was bullied at Martha Brown on a daily basis. Plaintiffs allege that H.W. experienced anxiety, headaches and light headedness due to the bullying, which caused him to miss classes and school days.

H.W. met again with Cocilova on March 25, 2011, and he complained about the conduct of two specific peers. Plaintiffs then requested a meeting with Cocilova and Dunn to deal with the problem. Dunn, in response, stated in an April 4, 2011 e-mail that he was unaware of the situation, but that he would meet with Cocilova and H.W. "to discuss this and come up with a plan to make sure it doesn't happen any more."

On April 4, 2011, Dunn and Cocilova met with H.W. and one of the peers of which he complained. At the meeting, Dunn reprimanded the student. Dunn then called Plaintiffs to inform them of the meeting and his opinion that the bullying would not continue. H.W. left school later that day due to anxiety and did not return to school the following day. On April 5, 2011, Dunn and Cocilova met with the other peer of which H.W. had complained.

Plaintiffs allege that "[professional educational literature does not support [an] approach which humiliates the bully thus

setting the stage for further confrontation between victim and bully." Plaintiffs allege that following theses meetings the bullying worsened and other students began to bully H.W.

Plaintiffs then met with Dunn on April 29, 2011. They allege that Dunn initially claimed that he thought there had been a good resolution to the bullying. Dunn then stated, "I think we are all trying to get our heads around what's real and what's ultra-high anxiety. Are kids really saying his name in the hall or is he thinking he's hearing his name in the hall." Dunn then told Plaintiffs he "would have [their] son's back." He later told them that he would personally monitor the hallways while H.W. walked from Social Studies to Technology class.

Then, on May 5, 2011, H.W. was approached by two lacrosse players while he was standing at his locker, and one of them "jammed" a lacrosse stick into H.W.'s buttocks. H.W. attempted to stop the students, but they proceeded to stick the lacrosse stick into his buttocks a second time. After the incident, Dunn stated that "the students are great when they are in class. They are pretty good kids. Eight hundred kids in the hall without direct adult supervision. They are running with the pack and can revert to the lowest thought that group has."

H.W. did not return to Martha Brown after the May 5, 2011 incident and was tutored at home until he transferred to Johanna Perrin for the 2011-2012 school year. Plaintiffs allege that the

bullying continued at Johanna Perrin and that H.W. experienced both physical and sexual harassment. H.W. alleges that three students, E.K. T.W. and J.B., were specifically involved in the bullying.

On November 29, 2011, H.W.'s French teacher called Plaintiffs to inform them of an incident involving E.K. Plaintiffs allege that the administration did not take any action against E.K. for this incident, but they do not allege what specifically took place. Then on November 30, 2011, E.K. "ordered another student" to physically attack H.W. and he also continued to "harass" H.W. throughout the day.

On December 5, 2011, a student stole H.W.'s report and hid it, T.W. threw sports equipment at H.W. during gym class, and another student threw a hockey puck at him. Other students also verbally harassed H.W. during the gym class, but the gym teacher, Dan Parsons ("Parsons"), did not intervene. Plaintiffs allege that Parsons failed to intervene on multiple occasions and that H.W. experienced similar physical and verbal harassment by his peers during gym class on a regular basis. They allege that Parsons stated that the hockey puck incident was an "accident." The complaint does not allege whether Parsons had any direct communications with the alleged perpetrators of the bullying towards H.W., but Plaintiffs allege that he should have but did not intervene to stop the harassment. On one occasion, Plaintiffs allege that Parsons laughed while students made fun of the personal

hygiene of another student. However, this incident is not alleged to have involved H.W.

E.K. continued to bully H.W. and on February 15, 2012, E.K. punched H.W. in the back. H.W. did not report this incident.

On March 22, 2012 another student, C.S., grabbed and squeezed H.W.'s nipples. H.W. reported the incident to the guidance counselor and Assistant Principal, Kevin Henchen ("Henchen"), viewed a video tape of the incident and stated "it definitely appeared as if something happened." Plaintiffs are not aware of what actions were taken to discipline C.S.

H.W. continued to experience daily bullying, including verbal taunting and physical threats, which did not improve after meetings with parents and administrators. Plaintiffs allege that "any response by the school was completely inadequate." H.W. again reported bullying by E.K. on April 23, 2012, but he was told "nothing could be done."

Plaintiffs allege that H.W. also experienced other harassment of a sexual nature as follows:

A student told H.W., "I'm going to grab your titties." A student suggestively nodded at H.W.'s crotch. Students grabbed H.W.'s buttocks on several occasions. Students called him a "girl" a "faggot" a "penis" a "cunt" and an "asshole" and repeatedly taunted him by saying the word "balls." A student asked him, "Do you want to fuck?" and made "lewd" hand gestures toward him. E.K.

suggestively winked at him while licking an object on May 31, 2011 and on June 1, 2011, winked at him and grabbed H.W.'s genitals. After students learned that E.K. grabbed H.W.'s genitals, they taunted him by making "crotch-grabbing" motions.

Plaintiffs alerted the administration to each incident, but they allege that the school failed to identify any student as responsible. Henchen and Principal Provenzano told Plaintiffs that they reported the incident where E.K. grabbed H.W.'s genitals to the superintendent, filed a Violent and Disruptive Incident Report and "applied consequences", but Plaintiffs were not informed of what disciplinary actions were taken.

H.W. left Johanna Perrin on the advice of his psychologist on June 12, 2012. Plaintiffs allege that H.W. suffered severe anxiety because of the bullying, which was not adequately addressed by teachers and administrators. They are not aware of any discipline of any student, except that E.K. received a one-day in-school suspension on December 14, 2011. They allege that administrators knew or should have known of the bullying and that they failed to protect H.W. from repeated episodes of bullying.

## **DISCUSSION**

In reviewing a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See ATSI Commc'ns,

Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.2007); Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir.2006). The plaintiff must satisfy "a flexible 'plausibility standard.'" See Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir.2007). A claim that is not plausible on its face must be "supported by an allegation of some subsidiary facts to survive a motion to dismiss." See Benzman v. Whitman, 523 F.3d 119, 129 (2d Cir.2008). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." See id. at 1974.

## A. Substantive Due Process

The Due Process Clause of the Fourteenth Amendment has been interpreted to protect "an individual's right to bodily integrity free from unjustifiable governmental interference." Lombardi v. Whitman, 485 F.3d 73, 81 (2d Cir. 2007). The Due Process Clause does not specifically require the State to protect an individual from the conduct of private actors. DeShaney v. Winnebago County Dep't of Soc. Services, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). However, courts have interpreted the Due Process Clause to require the State to protect an individual from private harm where the State has created a danger or the State has

a special relationship with the individual such that it has a duty to protect the individual from private harm. See <u>Chambers v. North Rockland Cent. School Dist.</u>, 815 F.Supp.2d 753, 763 (2011)(citing <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 533 (2d Cir. 1993)); <u>HB and SB v. Monroe Woodbury Cent. School Dist.</u>, No. 11-CV-5881, 2012 WL 4477552, *9 (S.D.N.Y. September 27, 2012). Plaintiffs contend that both the "special relationship" and "state-created danger" doctrines apply in this case. Therefore, they contend, the District and its employees had a duty to protect H.W. from the bullying that occurred while he attended Martha Brown and Johanna Perrin.

**1. Special Relationship**

The State may be responsible for the care and protection of individuals where a special relationship exists between the State and the individual. <u>DeShaney</u>, 489 U.S. at 198-200. Such a special relationship exists, for example, when a person is incarcerated in a state prison or mental institution. <u>Id</u>. Recently, courts in this Circuit and others addressing cases of peer-on-peer bullying in schools have held that the special relationship doctrine does not apply in the public school context, even if school attendance is compulsory. See <u>Monroe Woodbury</u>, 2012 WL 4477552 at *10 (citing <u>Santucci v. Newark Valley School Dist.</u>, No. 05-CV-0971, 2005 WL 2739104, *3 (N.D.N.Y. October 24, 2005)(collecting cases); <u>Chambers</u>, 815 F.Supp.2d 753763, note 10; <u>Patenaude v. Salmon River</u>

Central Sch. Dist., No. 03-CV-1016 (N.D.N.Y.2005)). These courts have reasoned that, while school attendance is compulsory, the parent ultimately determines the type of education his or her child will receive (private, public, home school), and while schools impose certain rules and restrictions on students, they do not limit an individual's freedom to act in the same manner as involuntary confinement by the state in a state prison or mental institution. See e.g. Crispim v. Athansan, 275 F.Supp.2d 240, 247 (D.Conn. 2003); Seamons v. Snow, 84 F.3d 1226, 1235-1236 (10th Cir. 1996); Hasenfus v. LaJeunesse, 175 F.3d 68, 71-72 (1st Cir. 1999).

Plaintiffs argue that the doctrine should apply in the public school context and they cite several cases from the District Courts in this Circuit in support of this proposition. However, the cases cited by the Plaintiffs are more than twenty years old and have been distinguished by several courts recently based on their age and the more recent case law interpretations discussed above. Pl. Mem. of Law at 4-7; Monroe Woodbury, 2012 WL 4477552 at *10 (citing Crispim v. Athansan, 275 F.Supp.2d 240, 247 (D.Conn. 2003). The Second Circuit has yet to weigh in on this particular question, however, the weight of recent authority in this Circuit and others suggests that the duty to protect a student from the harassment of other students does not arise because of a special relationship between the State and the student while he or she attends public school. The Court agrees with the reasoning of these cases and

finds that the special relationship doctrine does not apply in this context.

### 2. State-Created Danger

Where state actors actively facilitate or encourage private actors to inflict harm, courts have held that the victims can pursue a claim against state actors based on the state-created danger doctrine. See, e.g., Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005); see also Kennedy v. City of Ridgefield, 411 F.3d 1134, 1142 (9th Cir.2005); Vélez-Díaz v. Vega-Irizarry, 421 F.3d 71, 80 (1st Cir. 2005). Passive conduct or a mere failure to intervene by state actors does not run afoul of the due process clause. See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 202 (1989). The Second Circuit has held that the "explicit approval of violence is but a subset of the affirmative conduct by state actors that can enhance the danger to a victim. The affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." See Okin v. Village of Cornwall-On-Hudson Police Dept., 577 F.3d 415, 429 (2d Cir. 2009)(citing Pena, 432 F.3d at 111); see also Chambers, 815 F.Supp.2d at 764-770.

Whether a state actor's conduct is active or passive can be difficult to discern. The Second Circuit in Pena v. Deprisco analyzed a case where a police officer, Grey, engaged in an all-day

drinking binge, coming into contact with officers and supervisors throughout the day, before killing three pedestrians in an accident. One set of officers saw Grey visibly intoxicated on the day of the accident but failed to intervene. This inaction was held not to violate the due process clause.

A second group of officers drank with Grey in the precinct's parking lot, traveled with him to a local bar where they continued to drink excessively for hours, and asked Grey to drive them back to the precinct. The Second Circuit held that these officers encouraged Grey's behavior, giving "implicit prior assurance to Grey that he could drink and drive with impunity." Pena, 432 F.3d at 109-11. Accordingly, the Court held that the action by the second group of officers fell on the "active" side because state actors conveyed an implicit approval to drink and drive. Id. at 110.

Here, Plaintiffs allege that the Defendants failed to adequately discipline the students who bullied H.W. at both Martha Brown and Johanna Perrin. They also allege that Principal Dunn at Martha Brown worsened the situation between H.W. and two particular students by failing to follow "[p]rofessional educational literature" which "does not support [an] approach which humiliates the bully thus setting the stage for further confrontation between victim and bully." They allege, in conclusory terms, that "their inaction and inadequate response communicated, explicitly or

implicitly, an official sanction." Such allegations are insufficient to plausibly state a claim for a due process violation based on a state created danger.

Viewing the allegations in the light most favorable to the Plaintiffs, at most, the Court can infer that actions by the teachers and administrators at Martha Brown were inadequate to stop the bullying that H.W. experienced. However, the Court cannot infer that the actions by the teachers and administrators at Martha Brown amount to an official sanction of the bullying, even if a meeting between a bully and a victim is against "professional education literature." The Court is simply not in a position to second guess the disciplinary decisions of school officials. See Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 648 (1999). Plaintiffs allege that Cocilova and Dunn met with several students accused of bullying H.W., that Dunn agreed to discuss the bullying problem with H.W. and his parents and to "come up with a plan to make sure it doesn't happen any more." Dunn further agreed to monitor the hallway as H.W. walked between classes. Even if these actions were inadequate to stop the bullying, they do not amount to an official sanction of the conduct.

With respect to the teachers and administrators at Johanna Perrin, Plaintiffs allege that gym teacher Parsons observed bullying but failed to intervene and that he stated that an

implicitly, an official sanction." Such allegations are insufficient to plausibly state a claim for a due process violation based on a state created danger.

Viewing the allegations in the light most favorable to the Plaintiffs, at most, the Court can infer that actions by the teachers and administrators at Martha Brown were inadequate to stop the bullying that H.W. experienced. However, the Court cannot infer that the actions by the teachers and administrators at Martha Brown amount to an official sanction of the bullying, even if a meeting between a bully and a victim is against "professional education literature." The Court is simply not in a position to second guess the disciplinary decisions of school officials. See Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 648 (1999). Plaintiffs allege that Cocilova and Dunn met with several students accused of bullying H.W., that Dunn agreed to discuss the bullying problem with H.W. and his parents and to "come up with a plan to make sure it doesn't happen any more." Dunn further agreed to monitor the hallway as H.W. walked between classes. Even if these actions were inadequate to stop the bullying, they do not amount to an official sanction of the conduct.

With respect to the teachers and administrators at Johanna Perrin, Plaintiffs allege that gym teacher Parsons observed bullying but failed to intervene and that he stated that an

incident where H.W. was hit with a hockey puck was an "accident."[2] They further allege that they reported bullying on several occasions, meetings between parents and administrators were held, but Plaintiffs are "not aware" of any disciplinary actions taken and any such actions were inadequate to stop the bullying. It is alleged that one of the students, E.K., received a one-day in-school suspension. With respect to one of the allegations of physical, sexual abuse wherein E.K. grabbed H.W's crotch, Plaintiffs allege that administrators told them they "processed [the] incident with the Superintendent," filed a "Violent and Disruptive Incident Report" and "applied consequences." However, Plaintiffs do not know what "consequences" were actually applied.

The Court cannot infer from these allegations that the teachers or administrators at Johanna Perrin explicitly or implicitly communicated and official sanction of the bullying. As noted above, the failure to respond to any particular incident or the failure to adequately discipline a student in a manner that would prevent future bullying is insufficient to state a claim for a violation of due process based on a state created danger, absent an indication that school officials in some way communicated an

---

[2]Plaintiffs also allege that on one occasion Parsons laughed while "students" mocked another "student's" personal hygiene. However, this allegation does not involve H.W. and does not indicate whether the students involved were those that also bullied H.W. Therefore, the Court cannot infer from this allegations that Parsons' laughter plausibly communicated an official sanction of the bullying against H.W. or of the conduct of the students who bullied H.W.

official sanction of the bullying. See Chambers 815 F.Supp.2d 764-770 (finding that a school district's alleged failure to adequately discipline students for peer-on-peer bullying is insufficient to state a due process violation absent allegations that the district communicated, explicitly or implicitly, and official sanction of the conduct to the perpetrators).

Even if the alleged conduct was sufficient to plausibly allege an official sanction by the district and its employees of the peer-on-peer harassment, to state a claim for a substantive due process violation the conduct must also be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Pena, 432 F.3d at 112 (internal quotes and citation omitted); see also Smith v. Guildford Bd. Of Educ., 226 Fed. Appx. 58, 62 (2d Cir. 2007)(quoting Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir. 2002))("The protections of substantive due process are available only against egregious conduct which goes beyond merely "'offend[ing] some fastidious squeamishness or private sentimentalism'" and can fairly be viewed as so "'brutal' and 'offensive to human dignity'" as to shock the conscience.").[3] Plaintiffs' allegations do not rise to the level of conscience

---

[3] Plaintiffs cite Zeno v. Pine Plains Cent. Sch. Dist. 702 F.3d 655 (2012), in support of their argument that a less stringent standard is required at this stage. However, Zeno involved a claim for peer-on-peer racial harassment under TitleVI of the Civil Rights Act of 1964, not a claim for a violation of substantive due process, which is alleged here. Accordingly, the Court will apply the precedent which is relevant to a claim for a violation of substantive due process.

shocking conduct to plausibly allege a substantive due process violation.

Taken in the light most favorable to the Plaintiffs, the allegations demonstrate that, at most, the teachers and administrators at Martha Brown and Johanna Perrin either did not respond to H.W.'s complaints of harassment or did not adequately discipline the perpetrators of the harassment against H.W. and thereby did not prevent future instances of harassment. However, it is clear from the complaint that the Martha Brown defendants responded to H.W.'s and the Plaintiffs' complaints of bullying. While the response may not have been the desired response nor garnered the results sought by the Plaintiffs, the conduct of the Martha Brown defendants cannot plausibly be described as "conscience shocking" or "offensive to human dignity."

Further, the allegations against the Johanna Perrin teachers and administrators are that they also did not "adequately" respond to reports of bullying, not that they did not respond at all. While Plaintiffs are not aware of all of the disciplinary actions taken against the alleged perpetrators of the harassment against H.W., they do allege that E.K. was, on at least one occasion, disciplined with a one-day in-school suspension and that they were informed that the incident in which E.K. grabbed H.W.'s crotch was reported to the Superintendent and that "consequences" would be applied. While the consequences may have been inadequate, the actions of the

Johanna Perrin defendants cannot plausibly be described as "conscience shocking." See Smith, 226 Fed. Appx. at 62 (holding that a school district's failure to respond to harassment and bullying does not rise to the level of "egregious conduct ... so brutal and offensive to human dignity as to shock the conscience.")(quoting Half Hollow Hills, 298 F.3d at 173); see also Chambers, 815 F.Supp.2d at 769-772.

**B.  Title IX**

To state a claim for gender-based, peer-on-peer harassment under Title IX, Plaintiffs must allege harassment on the basis of gender that is "so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities" and that the school district had knowledge of the harassment and was deliberately indifferent to the conduct. See Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629 at 640-653 (1999); see also Preston v. Hilton Cent. Sch. Dist., 876 F.Supp.2d 235, 243 (W.D.N.Y. 2012).

The Court finds, at this stage, that Plaintiffs have set forth enough facts to state a plausible claim to relief for a violation of Title IX with respect to the conduct that occurred at Johanna

Perrin.[4]  The conduct of which plaintiff complains includes physical sexual harassment, with an alleged minimal response from the school district an its employees.  Because the conduct alleged includes more than mere taunting, teasing and name calling, the Court finds that Plaintiff is at least entitled to engage in discovery to determine whether the "surrounding circumstances, expectations and relationships" at the school could lead a reasonable trier of fact to conclude that the harassment and the school's response to it violated Title IX. See Davis, 526 U.S. at 649-653; c.f. Preston, 876 F.Supp.2d at 242-244 (insults and name calling, even if anti-homosexual or sexual in nature are insufficient to state a claim under Title IX where there are no allegations of "anti-male verbiage or overt sexually harassing conduct, such as unwelcome physical advances.").  Here, Plaintiffs allege that H.W. was subject to unwelcome sexual physical advances such as students grabbing his buttocks and his genitals, and students taunting him with similar lewd gestures.  Based on these serious allegations, the Court will allow the claim to proceed.

Plaintiff has also plausibly alleged that the conduct affected his educational experience and that the school was deliberately indifferent to the conduct. While the Court will not second guess

---

[4]The only conduct which was overtly sexual in nature at Martha Brown was the final incident in which students jammed a lacrosse stick into H.W.'s buttocks.  However, Plaintiffs do not allege that the school failed to respond or responded inadequately to this incident, they merely allege that H.W. left the school immediately following the incident.

the District's disciplinary decisions, based on the alleged lack of response to many of Plaintiffs' and H.W.'s complaints of physical sexual harassment, the Court finds that Plaintiffs are entitled to discovery to determine whether the school's response, or lack thereof, was "clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Therefore, the Court finds that Plaintiffs may proceed with their claim under Title IX for the conduct that occurred at Johanna Perrin.

## CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs' claim under Section 1983 for a violation of substantive due process is dismissed. Plaintiffs' claim for a violation of Title IX remains, as do Plaintiffs' state law claims.[5]

**ALL OF THE ABOVE IS SO ORDERED.**

    S/ MICHAEL A. TELESCA
    HON. MICHAEL A. TELESCA
    United States District Judge

Dated:    Rochester, New York
          February 25, 2013

---

[5] Defendants move to dismiss Plaintiffs' state law claims on jurisdictional grounds only. Because the Court has determined that Plaintiffs may proceed with their Title IX claim, Plaintiffs may also proceed with their state law claims.